**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Ms. Jane Doe

and

Mr. John Doe, minor, through his parent and
natural guardian Jane Doe

               Plaintiffs,
      vs.

Mechanicsburg School Board of Education

and

Mechanicsburg Exempted Village School
District

and

Ms. Danielle Prohaska, *In her Official*
*Capacity as Superintendent of Mechanicsburg*
*Exempted Village School District*

and

Ms. Christy Garver, *In her Official Capacity*
*as Principal of Mechanicsburg Exempted*
*Village School District*

and

Mr. Michael Cantrell, *In his Official Capacity*
*as Men's Basketball Coach of Mechanicsburg*
*Exempted Village School District*

and

Mr. Andrew C. Lawhorn

and

Mr. Charles Hodge
          Defendants.

Case No. 3:20-cv-458


**JURY DEMAND**
**ENDORSED HEREIN**

**COMPLAINT**

1. From 2015 to present time, Plaintiff John Doe was and is the subject of repeated and severe peer to peer harassment and bullying at Dohron Wilson Elementary School. He suffered from the aggressive, violent, and bullying behavior that was widespread and permitted by Mechanicsburg School District and Defendants.

2. These incidents of abuse were regularly documented by Plaintiff Jane Doe ("Jane Doe") and submitted to the Mechanicsburg School District and Defendants for investigation and follow-up.

3. Despite the clear and obvious harm John Doe was suffering from, Defendants recklessly and deliberately withheld vital information from his mother, including, but not limited to how often these events happened; whether the events were investigated; and whether discipline was imposed on the responsible peers.

4. Aggressive behavior, aggression, bullying, intimidation, and harassment (collectively referred herein as "aggressive behavior"), upon information and belief, was and is common at Dohron and in the Mechanicsburg School District. Defendant school officials not only knew that student-on-student aggression was rampant but chose to cover it up rather than alert parents and the school community so the aggressive behavior could be investigated and resolved.

5. Despite the official statistic that Dohron reported to the public that it had zero bullying incidents during the five-year period, Defendants were aware of, permitted, did not abate, and in fact harbored the bullying, physical aggression, harassment, and intimidation **[Exhibit A].**

6. When John Doe attended Dohron he had an expectation of safety and that he would be safe and protected in the school environment.

7. Rather, Defendants misrepresented information to parents, including Jane Doe, about the risks their children faced.

8. Defendants, with utter reckless and wanton disregard for John Doe, permitted a treacherous school environment to become even more so by withholding critical information to his parent about what the school was doing to avoid similar situations.

9. Plaintiffs now bring this case seeking fair compensation for John Doe's pain and suffering and to ensure that in the future, the students at Dohron are kept safe and the school administration institutes appropriate mandatory training and policies to ensure that no further cover-up of bullying and aggressive behavior can ever happen again.

## JURISDICTION AND VENUE

10. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

11. Jurisdiction over the federal civil rights claim is conferred on this Court by 28 U.S.C. §§1331 and 1343(3) and (4).

12. Jurisdiction over the state law claims is conferred on this Court by 28 U.S.C. §1367(a).

13. Venue is proper in this Division.

## THE PARTIES

14. Plaintiff Jane Doe ("Jane Doe") is a citizen and resident of Champaign County, State of Ohio. She is the mother of John Doe, a student enrolled in the Mechanicsburg Exempted Village School District.

15. Plaintiff John Doe ("John Doe") is a citizen and resident of Champaign County, State of Ohio. He is a minor and was a former student Dohron Wilson Elementary School. John Doe now attends Mechanicsburg Middle School.

16. Plaintiff Jane Doe and Plaintiff John Doe bring this action under pseudonym names because the nature of this action will compel the Plaintiffs to disclose information of the utmost intimacy and because one of the Plaintiffs is a child. A motion for a protective order will be filed simultaneously with this Complaint.

17. Defendant Mechanicsburg School Board of Education ("MVSD Board") is a political subdivision capable of suing and being sued under the law of Ohio and the United States. Mechanicsburg School Board of Education operates Mechanicsburg Exempted Village School District ("MVSD").

18. Defendant Danielle Prohaska ("Prohaska") who is being sued in her official capacity, is the Superintendent for MVSD. Defendant Prohaska is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

19. Defendant Christy Garver ("Garver") who is being sued in her official capacity, is the Principal of Dohron Elementary School, a school in the MVSD system. Defendant Garver is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

20. Defendant Michael Cantrell ("Cantrell") who is being sued in in his official capacity as the Men's Basketball Coach for MVSD. Defendant Cantrell is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

21. The term "MVSD Defendants" refers collectively to Defendants Prohaska, Garver, Cantrell, and the Board.

22. Defendant Andrew C. Lawhorn ("Lawhorn") is a citizen and resident of Champaign County, State of Ohio. Upon information and belief, Defendant Lawhorn is the volunteer coach for the Mechanicsburg Youth Basketball program.

23. Defendant Christopher Hodge ("Hodge") is a citizen and resident of Champaign County, State of Ohio. Upon information and belief, Defendant Hodge is the assistant volunteer coach for the Mechanicsburg Youth Basketball program.

## **STATEMENT OF FACTS**

24. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

25. John Doe is an intelligent, vibrant, and easy-going boy; a student-athlete that loves to play sports, especially basketball and football; a boy who is an over-achiever in many areas of life; and most importantly, a boy who looks out for others and has love and compassion in his heart.

26. John Doe attend Dohron until 2020 and generally excelled academically in his courses.

27. However, despite his talents and fun-loving nature, John Doe was and has been subjected to severe and pervasive peer to peer aggressive behavior.

### **State And District Policy Prohibiting Harassment, Intimidation, Or Bullying**

28. It is the goal of the State Board of Education to enhance/create positive learning and teaching environments. The State Board of Education defines a positive climate as "one that emphasizes and recognizes positive behaviors, evokes nonviolence, cooperation, teamwork,

understanding and acceptance toward all students and staff in, and in transit to and from, the school environment."[1]

29. The Ohio Department of Education provides MVSD with "model policies and strategies that eliminate negative behaviors and recognize positive behaviors that promote safe and secure learning environments for all students and staff. This model policy has informed local schools as they establish policies that assist school personnel to identify and address issues of bullying, intimidation and harassment that occurs between students[.]"[2]

30. Upon information and belief, MVSD Defendants have chosen not to follow these policies at Dohron.

31. Ohio Revised Code 3313.666 requires MVSD to establish policies that assist school personnel to identify and address issues of bullying, intimidation and harassment that occurs between students.

32. O.R.C. 3313.666(B)(5) further requires that the custodial parent or guardian be notified of any incidents involving their child.

33. O.R.C. 3313.666(B)(11) requires the district administration to semiannually provide the president of the district board a written summary of all reported incidents of harassment, intimidation or bullying and post the summary on the district's website.

34. Defendant MSVD Board crafted and promulgated their local policy for aggressive behavior under section 5517 (hereinafter "MVSD Policy") in November 2013. **[Exhibit B]**.

35. The MSVD Policy names Defendant Garver as the Anti-Harassment Compliance Officer whose job it is to investigate claims of harassment, intimidation, or bullying.

---

[1]    https://education.ohio.gov/getattachment/Topics/Other-Resources/School-Safety/Safe-and-Supportive-Learning-Administrators/Drive-Policy-and-Practice-with-Data/Model-Anti-Harassment-Anti-Intimidation-and-Anti-Bullying-Policy.pdf.aspx
[2] *Id*.

36. Any teacher, administrator, or other District employee or official who receives a complaint of harassment, intimidation, or bullying ***shall*** file it with the District's Anti-Harassment Compliance Officer within two (2) business days of learning of the incident.

37. Upon receipt of any complaint, formal or informal, Defendant Garver must begin an investigation.

38. The type of investigation initiated is driven by several factors including whether the complaint was formal or informal in nature, the request of the complainant, and the nature of the harassment alleged.

39. Under MVSD policy, in order to be considered a formal complaint, the complaint must include, to the extent it is available, the identity of the individual believed to have engaged in, or be engaging in, offensive conduct/harassment/retaliation; a detailed description of the facts upon which the complaint is based; a list of potential witnesses; and the resolution sought by the Complainant.

40. All complaints by Plaintiffs in this matter were formal complaints.

41. Upon receipt of a formal complaint, Defendant Garver must consider what action, if any, must be taken in the investigatory phase to protect the student from further harassment or retaliation.

42. After receipt of the formal complaint, and within fifteen (15) business days, an investigation must be completed by Defendant Garver. The investigation must include:

   a. Interviews with the Complainant;
   b. Interviews with the Respondent;
   c. Interviews with any other witnesses who may reasonably be expected to have any information relevant to the allegations;
   d. Consideration of any documentation or other information presented by the Complainant, Respondent, or any other witness that is reasonably believed to be relevant to the allegations.

43. Throughout the investigation, Defendant Garver is required to keep the parties informed of the status of the investigation and the decision-making process.

44. At the conclusion of the investigation, Defendant Garver must prepare and deliver a written report to the Defendant Prohaska that summarizes the evidence gathered during the investigation, recommendation(s) based on the evidence, and the definition of unlawful harassment as provided in Board policy and State and Federal law as to whether the Complainant has been subjected to unlawful harassment.

45. Defendant Garver's recommendations must be based upon the totality of the circumstances, including the ages and maturity level of those involved.

46. Absent extenuating circumstances, within ten (10) school days of receiving the report by Defendant Garver, Defendant Prohaska must either issue a final decision regarding whether the complaint or harassment has been substantiated or request further investigation. A copy of the final decision should be provided to all parties involved.

47. If Defendant Prohaska requires additional investigation, she must specify the additional information that is to be gathered, and such additional investigation must be completed within ten (10) school days.

48. At the conclusion of the additional investigation, Defendant Prohaska must issue a final written decision as described above.

49. A Complainant or Respondent who is dissatisfied with the final decision may appeal through a signed written statement to the MSVD Board within five (5) business days of his/her receipt of the Superintendent's final decision.

50. Despite these robust policies, MVSD Defendants were deliberately indifferent to the abuse and failed to adhere to the policy and, through their inactions, allowed Plaintiff John Doe to

be further subjected to severe, pervasive, and persistent bullying and harassment from other students for a significant period.

51. Upon information and belief, there have been a number of bullying incidents that Defendants' have covered-up or have conspired to cover-up.

### Incidents of Peer to Peer Harassment and Bullying

### A. First Incident

52. The first incident of peer to peer harassment occurred in 2015 when John Doe was in the first grade.

53. No formal report was made it the school; as the parties hoped it was an isolated incident that would not repeat.

### B. Second Incident

54. In or around October 2017, Jane Doe reported to John Doe's third grade teacher that he has struggled since first grade with several students in his class. The students taunt him, make fun of his name, heckle him about his body shape and size, sports abilities, favorite sports team, etc.

55. The formal complaint was made via email.

56. The third-grade teacher responded with "please know we do not tolerate bullying, and the issue will be addressed." The teacher also indicated she'd talk to Defendant Garver about the incident.

57. However, upon information and belief, MVSD Defendants failed to investigate the report of abuse, failed to follow-up with Plaintiff Jane Doe about her formal complaint, and failed to accurately report the incident of abuse to the public.

**C. Third Incident**

58. In or around November 2017, a third incident occurred where John Doe saw scribbled on the bathroom stall at school the phrase "F*** You [Initials Redacted]."

59. A second formal complaint was made through email to the third-grade teacher.

60. The teacher responded with "thank you for letting us know. We will make sure this info gets to Ms. Garver and she can then make sure appropriate steps are taken".

61. However, upon information and belief, MVSD Defendants failed to investigate the report of abuse, failed to follow-up with Plaintiff Jane Doe about her formal complaint, and failed to accurately report the incident of abuse to the public.

**D. Fourth Incident**

62. Due to the believed failures of MVSD Defendants to investigate the previous formal complaints of aggressive behavior, additional acts of bullying were reported to the third-grade teacher by Jane Doe in or around January 2018.

63. In attempt to resolve this issue independently Jane Doe offered, in early January 2018, to conduct a seminar on kindness and respect to educate students about bullying and/or harassment behavior in the third-grade class.

64. That program unfortunately did not occur because the planned date resulted in a snow day at the school. Even then, Jane Doe sent in character bracelets and items for the teacher to hand out when she talked about character and good behavior.

65. Despite her best efforts, John Doe was still subjected to severe, pervasive, and persistent taunts, jokes, and bully-like behavior.

66. One of the students responsible for the behavior would kick John Doe when they changed classrooms in the hallway and other students would verbally insult John Doe.

### E. Fifth Incident

67. The abuse, unfortunately, did not cease when John Doe completed the third grade. Instead, these problems with bullying followed him when he entered the fourth grade.

68. In September 2018, Jane Doe filed a fourth formal complaint of bullying and/or harassment to the fourth-grade teacher about an issue that occurred at recess. Jane Doe reported all students involved, what occurred, and asked for "feedback and any plan of action."

69. The fourth-grade teacher responded to the complaint and told Jane Doe, "clearly this is an issue that needs to be addressed and handled as quickly as possible, I was not aware it was this bad as its difficult to see every single interaction that goes on with students. . ."

70. Still the MVSD Defendants failed to investigate the report of abuse, failed to follow-up with Plaintiff Jane Doe about her formal complaint, and failed to accurately report the incident of abuse to the public.

### F. Sixth Incident

71. The following day, John Doe was again subjected to bullying and/or harassment.

72. Jane Doe filed a fifth formal complaint with the fourth grade teacher and Defendant Garver.

73. Still the MVSD Defendants failed to investigate the report of abuse, failed to follow-up with Plaintiff Jane Doe about her formal complaint, and failed to accurately report the incident of abuse to the public.

### G. Seventh Incident

74. A sixth formal complaint was made after an incident occurred in March 2019 in the fourth-grade classroom related to the teacher/student interaction.

75. A game was played in class that made John Doe "the butt of the joke" and students teased him until he yelled for them to stop.

76. John Doe was dismissed from the classroom and went to the bathroom, alone, to cry in a bathroom stall.

77. Students then taunted John Doe with words like "you going to cry?" as a result of his emotional reaction.

78. The formal complaint was filed directly with Defendant Garver.

79. Defendant Garver responded with "I will definitely look into the events that occurred yesterday and try to get to the bottom of it."

80. Defendant Garver, however, upon information and belief, did not start a formal investigation as required by the District Policy nor did she follow-up with Jane Doe.

### H. Jane Doe Follow-Up

81. Concerned that the bullying and/or harassment complaints weren't being investigated, Jane Doe emailed Defendant Garver about how the district reports bullying incidents in September 2019.

82. The director of academic accountability responded and provided a link to access the semi-annual reports documenting bullying at the school.

83. MVSD reported to the public that it had **zero** bullying incidents during the five-year period.

84. Contrary to the claim made publicly, as required by O.R.C. §33133.666(B)(11), there are incidents of bullying at Dohron. As a result, MVSD Defendants not only fostered aggressive behavior, but they harbored it, thus secreting the need and ability of parents to protect their children.

85. Jane Doe in an email inquired with Defendant Prohaska as to why the incidents of bullying and/or harassing behavior of John Doe were excluded from the report.

86. Defendant Prohaska responded to the email with

> as you know the report consists of bullying and/or harassment that has been reported, investigated, and found to be verified. The report is generated from our Student Information System and includes discipline reports that have been coded specifically as bullying and/or harassment. The report will be reflective of incidents that may have resulted in other infractions and/or disciplinary coding. **With that being said, your email is a good reminder for me to talk internally about how reports are investigated, documented, and coded when appropriate to ensure accuracy of information.** Thank you again for asking questions and sharing information with me and other administrators as well [Emphasis Added].

87. As a follow-up, Jane Doe requested "how it [bullying] was investigated and what standard was used to determine the validity of our concerns and the behavior".

88. Instead of citing to the MVSD Policy, Defendant Prohaska informed Jane Doe she needed to talk with Defendant Garver before she could get a detailed response to Jane Doe.

89. Defendant Prohaska responded to Jane Doe on September 25 via email which stated, in part,

> in general, and in your case as well, reports to teachers and/or the principal are first investigated at the classroom level, trying to handle situations at the lowest level in order to promote positive behaviors." "Reports made to teachers and/or the principal that are mediated at the classroom level are not entered into our Student Information System, and therefore would not show up in our semi-annual report. However, that does not mean they were not addressed. Only referrals that are written up to be addressed beyond classroom/grade level interventions are recorded in the system. I know that you received several messages from teachers regarding how they were supporting the situation in the classroom. Therefore, your calls/emails to teachers and the principal could have very well resulted in classroom interventions and discipline, but I cannot share that specific information with you, which I know you understand.

### Bullying and/or Harassment During Basketball Season

90. Outside of school, John Doe was subjected to bullying and/or harassment while participating in youth basketball.

91. Upon information and belief, Defendant Cantrell, in his official capacity, aids, promotes, assists and/or otherwise provides support to the youth basketball program.

92. Specifically, Defendant Cantrell conduct business related to the youth basketball program through his school issued email address.

93. Additionally, upon information and belief, Defendant Cantrell, in his official capacity, actively participates in and recruits for the youth basketball program.

94. The youth basketball program conducts its meeting and practices at the school facilities and utilizes the school's equipment.

95. Mechanicsburg youth basketball program is a school activity and is subject to the same laws and regulations that the school district and its employees are subject to.

### I. Incident

96. John Doe has played in the youth basketball program for over two years. During that time, he has been subjected to ongoing severe, pervasive, and persistent bullying and harassment from other teammates (who are also the classmates who bully, harass, and attempt to intimidate him in the classroom).

97. On January 21, 2020, Defendant Lawhorn had the team apologize to John Doe, for the second time, as a result of the bullying and/or harassment by the fellow teammates.

98. Despite the apology the night before, on January 22, 2020, the teasing and tormenting continued between basketball and the classroom.

99. Jane Doe again asked Defendant Lawhorn to address the issue. He responded with "If I didn't hear it or see it, I won't address it. John Doe needs thicker skin."

100.    Distressed by this incident, John Doe had a mental breakdown after school on or about January 23, threatened to harm himself, and contemplated suicide as a direct result of Defendant Lawhorn's actions and the ongoing severe, pervasive, and persistent bullying and harassment from other students.

101. During this time, Jane Doe was at her place of employment in Columbus, Ohio when John Doe called her during his mental breakdown.

102. After their initial phone call, Jane Doe was unable to reach John Doe, until she arrived home. This made her fear that something terrible, and irreversible happened during her forty-five-minute drive home.

103. Jane Doe reported this incident to Defendant Lawhorn who told her John Doe was effectively removed from the youth basketball program. [3]

### I. Jane Doe Follow-Up With School

104. Following the incident, Jane Doe emailed Defendant Prohaska to report the bullying which occurred during the basketball practices and occasionally at games. Specifically, Jane Doe reported Defendant Lawhorn's son was the primary individual responsible for taunting, teasing, and making fun of John Doe.

105. Jane Doe further reported to Defendant Prohaska that John Doe had a mental breakdown after school, threatened to harm himself, and contemplated suicide. Further, that John Doe socially isolates at school due to the repeated bullying.

106. Jane Doe asked Defendant Prohaska to overhaul the coaching program and to discuss attitude and being a good teammate with students.

107. The school refused to intervene.

108. The youth basketball program is organized during school hours.

109. The youth basketball program utilizes school resources to hold practices and games.

110. The youth basketball program operates on school property.

111. Only Mechanicsburg students can participate in the youth basketball program.

---

[3] John Doe was excluded from the team practice that night and was told he would not appear in the team photo.

112.   The youth basketball program, upon information and belief, is overseen by school employees.

## FIRST CAUSE OF ACTION- § 1983- STATE CREATED DANGER
### (MVSD DEFENDANTS)

113.   Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

114.   MVSD Defendants have, under color of law, deprived John Doe of rights, privileges, and immunities secured to him by the United States Constitution including the right to due process under the Fourteenth Amendment, and specifically to the right to be free from affirmative actions directly increasing his vulnerability or otherwise placing him in danger and taking away from his parents their ability to protect him.

115.   MVSD Defendants told Jane and John Doe that they would investigate the matter, or that they would take care of the issue John Doe was experiencing.

116.   Further Defendant Prohaska told Jane Doe that she would internally discuss how bullying is investigated, documented, and coded to ensure accurate reports with Defendant Garver.

117.   MVSD Defendants increased the danger John Doe faced because they prevented his parents from receiving accurate information about the totality of peer to peer bullying and harassment at Dohron.

118.   Further, the harassment and bullying increased after it was first reported because MVSD Defendants failed to take decisive action after the first incident.

119.   These repeated instances and failures to act constitute a continuous course of conduct by Defendants and are a continuous violation of Plaintiff Doe's rights.

120. Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

121. MVSD Defendant's affirmative misrepresentation to Jane Doe that they'd "take care of it" put John Doe in special danger that was not shared with the public at large.

122. MVSD Defendants' deliberate indifference put John Doe's life at risk and caused him to contemplate suicide. Defendants acted with deliberate indifference when they concealed from his parents the danger John Doe was in at school, causing them serious emotional distress when they could not protect him.

123. MVSD Defendants were aware John Doe suffered from peer to peer harassment and bullying.

124. Student bullying is known to cause negative thoughts, emotions, and potential suicide.

125. MVSD Defendants knew or should have known that making affirmative misrepresentations to Jane Doe that they were "taking care of it" could result in a substantial risk of serious harm if they failed to take corrective action.

126. That as a direct and proximate cause of MVSD Defendants' conduct, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

127. That as a further direct and proximate cause of MVSD Defendants' conduct, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## SECOND CAUSE OF ACTION – § 1983 – SHOCKS THE CONSCIENCE
## (MVSD DEFENDANTS)

128. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

129. MVSD Defendants have, under color of law, deprived John Doe of rights, privileges, and immunities secured to him by the United States Constitution including the right to due process under the Fourteenth Amendment, and specifically to his right to be free from government actions that shock the conscience.

130. MVSD Defendants deliberate indifference put John Doe's life at risk and caused him to contemplate suicide. Defendants acted with deliberate indifference when they concealed from his parents the danger John Doe was in at school, causing them serious emotion distress when they could not protect him.

131. These repeated instances and failures to act constitute a continuous course of conduct by Defendants and are a continuous violation of Plaintiff Doe's rights.

132. Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

133. That as a direct and proximate cause of MVSD Defendants' conduct, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

134. That as a further direct and proximate cause of MVSD Defendants' conduct, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## THIRD CAUSE OF ACTION – §1983 – EQUAL PROTECTION
## (MVSD DEFENDANTS)

135.   Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

136.   MVSD Defendants have, under color of law, deprived John Doe of rights, privileges, and immunities secured to him by the United States Constitution including the right to equal protection under the Fourteenth Amendment.

137.   MVSD Defendants violated John Doe's equal protection rights when they treated students who were victims of bullying and student-on-student aggression differently than they treated this situation.

138.   While other students who experienced bullying had their matter investigated, John Doe was deprived of the same protection as was his mother; whom was deprived of the ability to protect her son.

139.   There is no rational basis in treating these two groups differently.

140.   MVSD Defendants deliberate indifference put John Doe's life at risk and caused him to contemplate suicide. Defendants acted with deliberate indifference when they concealed from his parents the danger John Doe was in at school, causing them serious emotion distress when they could not protect him.

141.   MVSD Defendants had knowledge of the abuse but failed to take action.

142.   These repeated instances and failures to act constitute a continuous course of conduct by Defendants and are a continuous violation of Plaintiff Doe's rights.

143.   Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

144.     That as a direct and proximate cause of MVSD Defendants' conduct, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

145.     That as a further direct and proximate cause of MVSD Defendants' conduct, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## FOURTH CAUSE OF ACTION - §1983 – MECHANICSBURG EXEMPTED VILLAGE SCHOOL DISTRICT- MUNICIPAL LIABILITY

146.     Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

147.     Defendants MVSD and Prohaska failed to provide an adequate policy to guide defendants, school officials, and teachers responding to bullying, violence, and student-on-student aggression such as what happened to students like John Doe.

148.     Defendants MVSD and Prohaska failed to adequately train and supervise defendants, school officials, and teachers on how to respond to incidents like those experienced by students like John Doe.

149.     Defendants Mechanicsburg Schools Board of Education and Superintendent Prohaska failed to conduct a meaningful investigation into the actions of Defendant Garver and thus ratified her failures, as official MVSD policy, causing MVSD to be liable for their constitutional violations.

150.     The failure to provide adequate policies, training, supervision, monitoring, and investigation of Defendant Garver's actions was outrageous and deliberately indifferent to the rights of students, including John Doe.

151. Defendants MVSD and Prohaska's rules, regulations, customs, policies, practices, usages, procedures, inadequate training and supervision, and ratification of Defendant Garver's actions, were all inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by John Doe.

152. As Superintendent, Defendant Prohaska is the final decision-maker for all MVSD policies, practices, and decisions to cover-up and harbor evidence of aggressive behavior at Dohron.

153. To the extent that Defendant Garver acted in violation of MVSD policies, she was acting as final decision-maker, whose actions were final and unreviewable and are not constrained by the official policies of superior officials.

154. Defendants Prohaska and Garver ratified the actions of all other Defendants, namely, Cantrell, Lawhorn, and Hodge.

155. These repeated instances and failures to act constitute a continuous course of conduct by Defendants and are a continuous violation of Plaintiff Doe's rights.

156. Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

157. That as a direct and proximate cause of MVSD Defendants' conduct, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

158. That as a further direct and proximate cause of MVSD Defendants' conduct, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## FIFTH CAUSE OF ACTION: NEGLIGENCE
### (AS TO DEFENDANTS MVSD AND PROHASKA)

159.    Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

160.    Defendants MVSD and Prohaska owed a duty to Jane Doe and John Doe to ensure that reports of bullying and/or harassment, as outlined in Incidents A, B, C, D, E, F, G,  and J, against John Doe are investigated by Defendant Garver, or her designated compliance officer.

161.    These repeated instances and failures to act constitute a continuous course of conduct by Defendants and are a continuous violation of Plaintiff Doe's rights.

162.    Defendants MVSD and Prohaska breached the duty owed when she failed to ensure Defendant Garver, teachers, and other administrators followed District Policy in reporting and investigating incidents of bullying and/or harassment as outlined in Incidents A, B, C, D, E, F, G, and J.

163.    Incidents A, B, C, D, E, F, G, and J represent a continuing and ongoing violation to the rights of John Doe.

164.    Defendants MVSD and Prohaska's breach of the duty owed was the direct and proximate cause of John Doe's mental and emotional anguish.

165.    Specially, Defendants MVSD and Prohaska failed to take the very steps the MVSD board devised to prevent such injury being inflicted by one student upon another.

166.    John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

167.    Defendants MVSD and Prohaska's actions were manifestly outside the professional responsibility to enforce school policy was followed and that John Doe was not abused and bullied by his fellow students.

168.  Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

169.  Defendants MVSD and Prohaska could have acted within her duty as superintendent to end this violence but failed to do. As such, she failed to exercise the judgment and discretion necessary to ensure school bullying and end the violence of John Doe.

170.  Defendants MVSD and Prohaska acted in a reckless manner when they failed to properly implement the school policy.

171.  That as a direct and proximate cause of Defendants MVSD and Prohaska's breach, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

172.  That as a further direct and proximate result, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## SIXTH CAUSE OF ACTION: NEGLIGENCE
### (AS TO DEFENDANTS MVSD AND PROHASKA)

173.  Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

174.  Defendants MVSD and Prohaska owed a duty to Jane Doe and John Doe to ensure that reports of bullying and/or harassment, generally, against John Doe are investigated by Defendant Garver.

175.  Defendants MVSD and Prohaska breached the duty owed when they failed to ensure Defendant Garver, teachers, and other administrators followed District Policy in reporting and investigating incidents of bullying and/or harassment, generally.

176.   These repeated instances and failures to act constitute a continuous course of conduct by Defendants and are a continuous violation of Plaintiff Doe's rights.

177.   Defendants MVSD and Prohaska's breach of the duty owed was the direct and proximate cause of John Doe's mental and emotional anguish.

178.   Specially, Defendants MVSD and Prohaska failed to take the very steps the MVSD board devised to prevent such injury being inflicted by one student upon another.

179.   John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

180.   Defendants MVSD and Prohaska's actions were manifestly outside the professional responsibility to enforce school policy was followed and that John Doe was not abused and bullied by his fellow students.

181.   Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

182.   Defendants MVSD and Prohaska could have acted within her duty as superintendent to end this violence but failed to do. As such, she failed to exercise the judgment and discretion necessary to ensure school bullying and end the violence of John Doe.

183.   Defendants MVSD and Prohaska acted in a reckless manner when they failed to properly implement the school policy.

184.   That as a direct and proximate cause of Defendants MVSD and Prohaska's breach, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

185. That as a further direct and proximate result, Plaintiffs are entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## SEVENTH CAUSE OF ACTION: NEGLIGENCE
## (AS TO DEFENDANTS MVSD AND PROHASKA)

186. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

187. Defendants MVSD and Prohaska owed a duty to Jane Doe and John Doe to ensure Defendant Garver immediately reported any knowledge of threats or violence by students.

188. Defendants MVSD and Prohaska breached the duty owed when she failed to ensure Defendant Garver followed MVSD Policy in reporting and investigating incidents of bullying and/or harassment.

189. These repeated instances and failures to act constitute a continuous course of conduct by Defendants and are a continuous violation of Plaintiff Doe's rights.

190. Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

191. Defendants MVSD and Prohaska's breach of the duty owed was the direct and proximate cause of John Doe's mental and emotional anguish.

192. Specially, Defendants MVSD and Prohaska failed to take the very steps the MVSD board devised to prevent such injury being inflicted by one student upon another.

193. John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

194. Defendants MVSD and Prohaska's actions were manifestly outside the professional responsibility to ensure school policy was followed and that John Doe was not abused and bullied by his fellow students.

195. Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

196. Defendants MVSD and Prohaska could have acted within her duty as superintendent to end this violence but failed to do. As such, she failed to exercise the judgment and discretion necessary to enforce school bullying and end the violence of John Doe.

197. Defendants MVSD and Prohaska acted in a reckless manner when they failed to properly implement the school policy.

198. That as a direct and proximate cause of Defendants MVSD and Prohaska's breach, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

199. That as a further direct and proximate result, Plaintiffs are entitled to compensatory, including economic and non-economic which exceed $25,000.00.

**EIGHTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AS TO DEFENDANTS MVSD AND PROHASKA)**

200. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

201. As a result of years of severe, persistent, and pervasive bullying and/or harassment, Plaintiff Jane Doe witnessed impending danger to John Doe. John Doe verbalized to Jane Doe that he wanted to die and was going to commit suicide.

202. Defendants MVSD and Prohaska negligently caused the environment of bullying and/or harassment because she failed to take the very steps the school board devised to prevent such injury being inflicted by one student upon another.

203. John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

204. Defendants MVSD and Prohaska's actions were manifestly outside the professional responsibility to ensure school policy was followed and that John Doe was not abused and bullied by his fellow students.

205. Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

206. These repeated instances and failures to act constitute a continuous course of conduct by Defendants and are a continuous violation of Plaintiff Doe's rights.

207. Defendants MVSD and Prohaska could have acted within her duty as superintendent to end this violence but failed to do. As such, she failed to exercise the judgment and discretion necessary to enforce school bullying and end the violence of John Doe.

208. Defendants MVSD and Prohaska acted in a reckless manner when they failed to properly implement the school policy.

209. That as a further direct and proximate cause of Defendants Defendants MVSD and Prohaska's negligence, Jane Doe has suffered and continues to suffer severe emotional

distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

210. That as a further direct and proximate result, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

### NINETH CAUSE OF ACTION: NEGLIGENCE
### (AS TO DEFENDANT GARVER)

211. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

212. Defendant Garver owed a duty to Jane Doe and John Doe to ensure that reports of bullying and/or harassment against John Doe were properly investigated in accordance with MVSD Policy.

213. Defendant Garver breached the duty owed when she failed to properly investigate this matter.

214. Upon information and belief, Defendant Garver failed to inform the individuals that engaged in the harassing conduct about the nature of the allegation and failed to provide a copy of the Anti-Harassment Policy.

215. Upon further information and belief, Defendant Garver failed to complete a formal investigation as described in ¶41.

216. These repeated instances and failures to act constitute a continuous course of conduct by Defendant and are a continuous violation of Plaintiff Doe's rights.

217. Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

218. Defendant Garver's breach of the duty owed was the direct and proximate cause of John Doe's mental and emotional anguish.

219. Specially, Defendant Garver failed to take the very steps the MVSD board devised to prevent such injury being inflicted by one student upon another.

220. John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

221. Defendant Garver's actions were manifestly outside the professional responsibility to ensure school policy was followed and that John Doe was not abused and bullied by his fellow students.

222. Defendant Garver could have acted within her duty as principal to end this violence but failed to do. As such, she failed to exercise the judgment and discretion necessary to enforce school bullying and end the violence of John Doe.

223. Defendant Garver acted in a reckless manner when she failed to properly implement the school policy.

224. That as a direct and proximate cause of Defendant Garver's breach, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

225. That as a further direct and proximate result, Plaintiffs are entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## TENTH CAUSE OF ACTION: NEGLIGENCE
## (AS TO DEFENDANT GARVER)

226. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

227.    Defendant Garver owed a duty to Jane Doe and John Doe to ensure that reports of bullying and/or harassment, as outlined in Incidents A, B, C, D, E, F, G, and J, against John Doe are promptly investigated.

228.    These repeated instances and failures to act constitute a continuous course of conduct by Defendant and are a continuous violation of Plaintiff Doe's rights.

229.    Defendant Garver breached the duty owed when she failed to follow District Policy in reporting and investigating incidents of bullying and/or harassment as outlined in Incidents A, B, C, D, E, F, G, and J.

230.    Incidents A, B, C, D, E, F, G, and J represent a continuing and ongoing violation to the rights of John Doe.

231.    Defendant Garver breach of the duty owed was the direct and proximate cause of John Doe's mental and emotional anguish.

232.    Specially, Defendant Garver failed to take the very steps the MVSD board devised to prevent such injury being inflicted by one student upon another.

233.    John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

234.    Defendant Garver actions were manifestly outside the professional responsibility to enforce school policy was followed and that John Doe was not abused and bullied by his fellow students.

235.    Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

236. Defendant Garver could have acted within her duty as superintendent to end this violence but failed to do. As such, she failed to exercise the judgment and discretion necessary to ensure school bullying and end the violence of John Doe.

237. Defendant Garver acted in a reckless manner when they failed to properly implement the school policy.

238. That as a direct and proximate cause of Defendant Garver's breach, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

239. That as a further direct and proximate result, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

**ELEVENTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AS TO DEFENDANT GARVER)**

240. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

241. As a result of years of severe, persistent, and pervasive bullying and/or harassment, Plaintiff Jane Doe witnessed impending danger to John Doe. John Doe verbalized to Jane Doe that he wanted to die and was going to commit suicide.

242. Defendant Garver negligently caused the environment of bullying and/or harassment because she failed to take the very steps the school board devised to prevent such injury being inflicted by one student upon another.

243. John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

244.    Defendant Garver's actions were manifestly outside the professional responsibility to ensure school policy was followed and that John Doe was not abused and bullied by his fellow students.

245.    Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

246.    Defendant Garver could have acted within her duty as principal to end this violence but failed to do. As such, she failed to exercise the judgment and discretion necessary to enforce school bullying and end the violence of John Doe.

247.    Defendant Garver acted in a reckless manner when she failed to properly implement the school policy.

248.    These repeated instances and failures to act constitute a continuous course of conduct by Defendant and are a continuous violation of Plaintiff Doe's rights.

249.    Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

250.    That as a direct and proximate cause of Defendant Garver's negligence, Jane Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

251.    That as a further direct and proximate result, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## TWELFTH CAUSE OF ACTION: NEGLIGENCE
### (AS TO DEFENDANT CANTRELL)

252.   Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

253.   Defendant Cantrell owed a duty to Jane Doe and John Doe to immediately report any knowledge of threats of violence by students.

254.   Upon information and belief, Defendant Cantrell breached the duty owed when he failed to immediately inform Defendant Garver of the bullying incidents involving John Doe.

255.   Defendant Cantrell's breach of the duty owed was the direct and proximate cause of John Doe's mental and emotional anguish.

256.   Specially, Defendant Cantrell failed to take the very steps the MVSD board devised to prevent such injury being inflicted by one student upon another.

257.   John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

258.   Defendant Cantrell's actions were manifestly outside the professional responsibility to ensure school policy was followed and that John Doe was not abused and bullied by his fellow students.

259.   These repeated instances and failures to act constitute a continuous course of conduct by Defendant and are a continuous violation of Plaintiff Doe's rights.

260.   Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

261.    Defendant Cantrell could have acted within his duty as a coach to end this violence but failed to do. As such, she failed to exercise the judgment and discretion necessary to enforce school bullying and end the violence of John Doe.

262.    Defendant Cantrell acted in a reckless manner when he failed to properly implement the school policy.

263.    That as a direct and proximate cause of Defendant Cantrell's breach, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

264.    That as a further direct and proximate result, Plaintiffs are entitled to compensatory, including economic and non-economic which exceed $25,000.00.

### THIRTEENTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT CANTRELL)

265.    Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

266.    As a result of years of severe, persistent, and pervasive bullying and/or harassment, Plaintiff Jane Doe witnessed impending danger to John Doe. John Doe verbalized to Jane Doe that he wanted to die and was going to commit suicide.

267.    Defendant Cantrell negligently caused the environment of bullying and/or harassment because he failed to take the very steps the school board devised to prevent such injury being inflicted by one student upon another.

268.    John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

269.   Defendant Cantrell's actions were manifestly outside the professional responsibility to ensure school policy was followed and that John Doe was not abused and bullied by his fellow students.

270.   Plaintiffs only became aware of the violations to the anti-bullying policy in September 2019 when Plaintiff Jane Doe was directed to review the anti-bulling information produced by the school.

271.   These repeated instances and failures to act constitute a continuous course of conduct by Defendant and are a continuous violation of Plaintiff Doe's rights.

272.   Defendant Cantrell could have acted within his duty as a coach to end this violence but failed to do. As such, he failed to exercise the judgment and discretion necessary to enforce school bullying and end the violence of John Doe.

273.   Defendant Cantrell acted in a reckless manner when they failed to properly implement the school policy.

274.   That as a direct and proximate cause of  Defendant Cantrell's negligence, Jane Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

275.   That as a further direct and proximate result, Plaintiff is entitled to compensatory, including economic and non-economic which exceed $25,000.00.

## FOURTEENTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANTS LAWHORN AND HODGE)

276.   Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

277.    Defendants Lawhorn and Hodge intended to or recklessly caused John Doe serious emotional distress by demeaning John Doe in telling him to get "thicker skin" and by excluding John Doe from practices, games, and the team photo.

278.    Upon information and belief, Defendants Lawhorn and Hodge, conspired to cause harm and to humiliate John Doe.

279.    The Defendants conduct was extreme and outrageous under the circumstances. A child reported incidents of bullying and instead of handling the issue, Defendants bullied the child and neglected the concern.

280.    John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

281.    Defendants Lawhorn and Hodge's actions were manifestly outside the professional responsibility to ensure activity policy was followed and that John Doe was not abused and bullied by his fellow students.

282.    Defendants Lawhorn and Hodge, could have acted within their duty as coaches to end this violence but failed to do so. As such, they failed to exercise the judgment and discretion necessary to enforce school bullying and end the violence of John Doe.

283.    Defendants Lawhorn and Hodge acted in a reckless manner when they failed to properly implement or follow the activity policy.

284.    These repeated instances and failures to act constitute a continuous course of conduct by Defendants.

285.    Defendants Lawhorn and Hodge not only owed a duty of ordinary care to John Doe, but as adults coaching students, had a special duty to not to cause harm to John Doe.

286. That as a direct and proximate cause of the Defendants' conduct, John Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

287. That as a further direct and proximate result, Plaintiff is entitled to compensatory, including economic and non-economic, and punitive damages, jointly and severally, which exceed $25,000.00.

## FIFTEENTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANTS LAWHORN AND HODGE)

288. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully restated herein.

289. Due to the Defendants' extreme and outrageous conduct as described-above, Plaintiff Jane Doe witnessed impending danger to John Doe. John Doe verbalized to Jane Doe that he wanted to die and was going to commit suicide.

290. The Defendants negligently caused the environment of bullying and/or harassment because they demeaned John Doe by telling him to get "thicker skin" and by excluding John Doe from practices, games, and the team photo.

291. John Doe's mental and emotional anguish was a foreseeable risk because bullying is known to result in harm, including psychiatric injury and suicide.

292. Defendants Lawhorn and Hodge's actions were manifestly outside the professional responsibility to ensure activity policy was followed and that John Doe was not abused and bullied by his fellow students.

293. Defendants Lawhorn and Hodge, could have acted within their duty as coaches to end this violence but failed to do so As such, they failed to exercise the judgment and discretion necessary to enforce school bullying and end the violence of John Doe.

294. Defendants Lawhorn and Hodge acted in a reckless manner when they failed to properly implement the school policy.

295. These repeated instances and failures to act constitute a continuous course of conduct by Defendants.

296. Defendants Lawhorn and Hodge not only owed a duty of ordinary care to John Doe, but as adults coaching students, had a special duty to not to cause harm to John Doe.

297. That as a direct and proximate cause of the Defendants' negligence, Jane Doe has suffered and continues to suffer severe emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life.

298. That as a further direct and proximate result, Plaintiff is entitled to compensatory, including economic and non-economic, and punitive damages, jointly and severally, which exceed $25,000.00.

**WHEREFORE**, Plaintiffs demand judgment, jointly and severally, against Defendants, The Mechanicsburg School Board of Education, The Mechanicsburg Exempted Village School District, Danielle Prohaska, in her official capacity as Superintendent, Christy Garver, in her official capacity as Principal, Michael Cantrell, in his official capacity as Men's Basketball Coach for MVSD, Andrew C. Lawhorn, and Christopher Hodge for compensatory damages, including economic and noneconomic damages, in an amount in excess of $25,000.00; for punitive damages against Defendant Lawhorn and Defendant Hodge in an amount in excess of $25,000.00;

prejudgment interest; costs, and attorney's fees; for costs of this action; and for any other relief, whether legal or equitable, this Court deems just and proper.

Respectfully submitted,

**/s/ Bradley N. Jeckering**
Bradley Jeckering (0092299)
D. Luke Meenach (0096286)
Jeckering & Associates, LLC
16 S. Main Street
Mechanicsburg, Ohio 43044
P: 937-896-2222
F: 614-515-4905
brad@centralohiolegal.com
luke@centralohiolegal.com
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury trial on all issues in this Complaint.

**/s/ Bradley N. Jeckering**
Bradley Jeckering (0092299)
D. Luke Meenach (0096286)